**In re Paul DUBROWSKY, Debtor.**

**ESTATE OF Arnold PERLBINDER, Plaintiff,**

v.

**Paul DUBROWSKY, Defendant.**

Bankruptcy No. 894–84895–478.
Adv. No. 894–8456–478.

United States Bankruptcy Court,
E.D. New York.

March 5, 1997.

Bryan, Levitin & Bab by Brian Kearney, New York City, for Plaintiff.

Flower & Medalie by Jeffrey Hertzberg, Bay Shore, NY, for the Chapter 7 Trustee.

Coblence & Warner by Kenneth E. Warner, New York City, for Defendant.

## DECISION REGARDING SANCTIONS PURSUANT TO BANKRUPTCY RULE 9011 and 28 U.S.C. § 1927

DOROTHY EISENBERG, Bankruptcy Judge.

In the aftermath of a decision rendered by this Court barring the discharge of Paul Dubrowsky (the "Defendant" or "Debtor"), the Estate of Arnold Perlbinder (the "Plaintiff") has made the instant motion for sanctions against the Debtor, his litigation counsel Kenneth Warner, Esq., and the firm of Coblence and Warner under Bankruptcy Rule 9011, 28 U.S.C. Sec. 1927 and pursuant to the Court's powers under 11 U.S.C. Section 105(a) to award sanctions. The Plaintiff also seeks to tax costs of the trial against the Defendant pursuant to 28 U.S.C. Section 1920. The Defendant, Warner and Coblence and Warner have objected, and the Defendant has cross-moved for sanctions against the Plaintiff and counsel under Bankruptcy Rule 9011. For the reasons set forth below, the Court grants the Plaintiff's motion for sanctions against the Defendant under Bankruptcy Rule 9011 in the amount of $5,000 for filing a Petition containing false statements in the Schedules and Statement of Financial Affairs. In addition, Warner and the Defendant are sanctioned jointly and severally in the amount of the legal fees incurred in connection with certain discovery disputes in the adversary proceeding. The award for legal fees incurred in connection with the discovery disputes is grounded in Bankruptcy Rule 9011 as to the Defendant, and in Bankruptcy Rule 9011 as well as 28 U.S.C. Section 1927 as to Warner. The portion of the motion requesting sanctions against the firm of Coblence and Warner is denied, and the Defendant's cross-motion for sanctions is denied in its entirety. The Plaintiff's request to tax costs is granted in the amount of $11,659.36.

### FACTS

The Court presumes that the parties are familiar with the facts as previously found by this Court in the decision of *Estate of Arnold Perlbinder v. Paul Dubrowsky*, Adv.Pro. No. 894–8456–478. The Court incorporates the facts and defined terms as set forth in its prior decision, and makes the following additional findings of fact.

On December 2, 1994, the Plaintiff filed a complaint seeking, *inter alia*, to bar the Debtor's discharge (the "Complaint"). The

Complaint contained allegations that the Defendant made false oaths in his Petition with respect to his (1) failure to reveal his interest in a checking account with Prudential Home Mortgage; (2) failure to schedule the existence of all of his assets; and (3) concealment of numerous pre-petition payments to creditors which should have been listed on the Defendant's statement of financial affairs. In his Answer, the Defendant denied all of the allegations contained in the Complaint.

The Debtor retained the firm of Coblence & Warner to represent him in the adversary proceeding. During the course of the adversary proceeding, Coblence & Warner represented Karen Dubrowsky, the Debtor's wife, as well. Kenneth E. Warner, Esq. was the partner who appeared at matters and who signed certain papers on behalf of the Debtor. Discovery commenced and on February 9, 1995, the Plaintiff served the first request for documents (the "February Request"). The February Request concerned the production of financial documents including credit card accounts, bank statements and canceled checks for accounts held by the Defendant individually or jointly with his wife from January 1991 to the petition date, documents relating to the SDS fund and the Home Savings account, tax returns and documents evidencing ownership of the Defendant's personal effects. In the Defendant's Response to the February Request dated March 9, 1995, which was signed by Warner, the Defendant objected in general to each request for documents, claiming that the documents requested were neither relevant nor "reasonably calculated to lead to the discovery of admissible evidence." (Plaintiff's Exh. G). Despite the Defendant's objections it is clear that even a cursory review of the February Request should have revealed to the Defendant and to Warner that the bulk of the documents requested were relevant and essential to the prosecution of the discharge action. Notwithstanding his objections, the Defendant did consent to the production of certain documents. For example, as to the request for bank account information, the Defendant consented to produce such documents dated from May, 1994 to the petition date which were in the Defendant's possession.

The Defendant failed to timely produce all documents responsive to the February Request, and at a hearing on a related matter held on April 6, 1995, the Defendant's failure to produce was raised. Although no formal motion was brought before the Court, it was clear that a directive to the Defendant was in order. The Court orally directed the Defendant to produce all documents responsive to the February Request by April 7, 1995. An order was entered on April 21, 1995 memorializing the Court's directive.

Despite the Court's directive at the April 6, 1995 hearing, as of April 13, 1995, the Defendant had not produced all of the records regarding the SDS Fund, the Prudential Home Equity account, checks from the Home Savings account, and information concerning the Defendant's employment contract with Outer Town Apparel. Warner forwarded a letter to the Plaintiff's counsel dated April 13, 1995 regarding the outstanding documents. (Defendant's Exh. 6C). Although Warner did state that missing checks from the joint Citibank account would be produced, counsel continued to object to the production of any records from the Home Savings account or the Prudential line of credit on the grounds of relevance. Warner also insisted that all documents from the SDS fund had been produced previously. Despite Warner's objections, Warner did not make a formal motion to quash.

Although the Court's order of April 21, 1995 did not arise as a result of a written motion to compel production of documents, there was an oral application made and heard, and the Court's order stands as a valid order nonetheless. Failure to comply with the Court's directives therein constitutes sanctionable conduct. As a result of the Defendant's continued recalcitrance, the Plaintiff was constrained to file a motion on May 9, 1995 to compel the production of documents and request for sanctions. A hearing was held on May 18, 1995, resulting in the entry of an order dated July 5, 1995 (the "July Order"). Pursuant to the July Order, the Defendant was directed to produce, *inter alia*, statements and canceled checks relating to the Home Savings of

America account, the Defendant's tax returns for 1992 to 1994, tax materials relating to the liquidation of the Debtor's IRA and interest income received in 1994 and documents regarding the Debtor's transfer of his interest in the residence to his wife. The Defendant was also ordered to obtain from third parties documents concerning the Debtor's credit cards, the Prudential line of credit and information concerning the IRA with the SDS Partners, all of which should have been within the Debtor's custody or control.

At the May 18, 1995 hearing, the Court admonished the Defendant that the documents requested were to be turned over or an order would be entered prohibiting the Defendant from introducing the documents at trial on the Defendant's behalf. The Court also pointed out the relevance of the materials requested despite Warner's arguments to the contrary, and the effect of the Defendant's failure to produce said documents: "The complaint [states] that if he can't prove where all his money went, and what happened to his finances, that's grounds to bar a discharge. Now if he wants to defend on that, he'd better have the records. If he doesn't have the record, his defense disappears. So it's a two-edged sword." (Plaintiff's Exh. J).

The Defendant's compliance with the Court's ruling at the May 18, 1995 hearing was incomplete. For example, the Defendant and the Defendant's counsel did not produce (1) complete copies of tax returns; omitting the K–1 attachments for certain tax years requested; and (2) complete records regarding the IRA held by the SDS Partners, which the Defendant contended were in the custody of Bear Stearns & Co., Inc. ("Bear Stearns") (Defendant's Exh. 9G). In his pleadings, Warner acknowledges the failure to produce all of the K–1's, alleging that the information contained in the 1993 K–1 would not be responsive to the Plaintiff's request. However, a review of the 1993 K–1 reveals that the Debtor transferred a $60,000 interest in the SDS Partners to his wife, leaving him with less than $6,000 in the SDS Fund.

In the meantime, on or about June 13, 1995, the Plaintiff had served subpoenas upon, *inter alia*, Karen Dubrowsky, Bear Stearns and Harry Wendroff, an accountant for P.D. Fashions, to obtain the information which the Defendant was either unable or unwilling to produce. The Defendant was notified of the subpoenas by letter dated June 22, 1995.

The subpoena served on Karen Dubrowsky sought the production of, *inter alia*, all bank records, including canceled checks, from the Home Savings account which had not already been produced, and bank records from any other bank account held in her name.

The Bear Stearns subpoena requested the production of documents related to the SDS Account. Despite the fact that the Defendant's counsel did not represent Bear Stearns or Wendroff, Warner filed an Order to Show Cause seeking to quash all of the subpoenas on procedural and substantive grounds. At the hearing held on July 11, 1995, the Court denied the motion to quash, and specifically directed the production of all financial records from the Home Savings Account and other requests made of Karen Dubrowsky. The Court also made it quite clear that the Defendant's counsel had no legal standing to object to the subpoena served upon Bear Stearns. The Court further reiterated and advised that all requested documents were to be produced within ten days. Although certain bank records were produced, the Defendant's wife, who was represented by Warner, failed to produce any records from her own account at Citibank, which records were requested in Karen Dubrowsky's subpoena. At a hearing on September 11, 1995, the Court ordered the production of these records, which ultimately revealed that the Defendant's income from Outer Town Apparel was deposited in this account, and that the Defendant paid certain bills from this account. It was further revealed at the September 11, 1995 hearing that the Debtor's counsel had produced to Plaintiff's counsel a loan application from Prudential which evidenced that certain information had been redacted concerning the Defendant's net worth. (Plaintiff's Exh. M). At trial, it was revealed that Karen Dubrowsky had redacted the information. (Trial tr. at p. 102–104).

At the September 11, 1995 hearing, it was also brought to the Court's attention that the Defendant and/or his wife had failed to produce 99 checks from the Home savings account despite repeated requests. (Id.). As this Court noted: "I think there's been enough warning. There have been orders. There have been directions on the record. There are several orders that have been entered in this case in this regard." The court went on to direct that the unredacted Prudential document, the 99 checks, and any other bank records were to be produced by September 26, 1995 or the answer would be stricken. (Id. at p. 17). On September 26, 1995, the Defense counsel wrote to the Plaintiff stating that the Defendant was producing the check registers for the 99 missing checks, apparently as a substitute for compliance with the directive regarding the actual checks. (Plaintiff's Exh. C). The trial took place on February 2, 1996 and February 5, 1996.

Based on the facts and testimony produced at the trial, the Court rendered a written decision denying the Debtor's discharge, pursuant to sections 727(a)(2)(A) and (a)(4) of the Bankruptcy Code. Thereafter, the Plaintiff made the instant motion seeking sanctions against the Debtor pursuant to Bankruptcy Rule 9011 for filing a petition containing false statements, and against the Debtor, Warner, and Coblence & Warner pursuant to 28 U.S.C. § 1927 for obstructing discovery during the trial. Given the facts of this case, and in consideration of the abusive discovery tactics employed by the Debtor and Warner, the Court finds that sanctions are appropriate as set forth below.

### SANCTIONS

A. *Bankruptcy Rule 9011*

The Bankruptcy Court is vested with the authority to sanction a debtor and his counsel for frivolous conduct and for providing false statements to the court. Such power is primarily rooted in Bankruptcy Rule 9011, which provides in relevant part:

 (a) Signature. Every petition, pleading, motion and other paper served or filed in a case ... shall be signed by at least one attorney of record.... The signa-

ture of an attorney or a party constitutes a certificate that the attorney has read the document; that to the best of the attorney's or party's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation or administration of the case.... If a document is signed in violation of this rule, the court on motion, or on its own initiative, shall impose on the person who signed in violation of this rule, the represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

Bankr.Rule 9011.

Bankruptcy Rule 9011 intentionally tracks certain language contained in Fed. R.Civ.P. 11. *In Re Ciancioso*, 187 B.R. 438, 442 (E.D.N.Y.1995). In 1993, amendments were made to Fed.R.Civ.P. 11 which, *inter alia*, granted the trial court discretion to impose sanctions in the event of a violation. Those amendments were not made in Bankruptcy Rule 9011, therefore sanctions are mandatory upon a violation of the rule in the Bankruptcy Court. *Id.* Therefore, Bankruptcy courts are under a duty to impose sanctions against debtors in addition to barring the debtor's discharge where the debtor's conduct violates Bankruptcy Rule 9011. *See In re Gioioso*, 979 F.2d 956, 960 (3rd Cir.1992) (Bankruptcy Court abused its discretion in failing to award sanctions against debtors for filing false schedules, in addition to barring the debtors' discharge); *In re Thompson*, 165 B.R. 30 (Bkrtcy.M.D.Tenn. 1994) (Bankr. Rule 9011 sanctions appropriate, in addition to barring the debtor's discharge, where the debtor knowingly signed schedules containing false information).

■ As in Fed.R.Civ.P. 11, Bankruptcy Rule 9011 requires that the signatory to the document conduct a reasonable inquiry before asserting the claim to ensure that it is well-founded in fact and law. *Ametex Fabrics v. Just in Materials, Inc.*, 94 Civ. 5226, 1996 WL 428391 (S.D.N.Y. July 31, 1996). Rule 11 sanctions are warranted where "a pleading has been interposed for any improper purpose [or if] after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well founded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). *See also, In re Ciancioso*, 187 B.R. 438 (E.D.N.Y.1995) (Bankruptcy Rule 9011 sanctions imposed where non-dischargeability complaint filed by third parties against debtor failed to state a claim and contained no legal or factual basis for relief sought).

■ Although an attorney and his client can be sanctioned under Bankruptcy Rule 9011, this rule is inapplicable to the attorney's law firm. *See Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989) (citing Fed.R.Civ.P. 11 pre–1993 amendment).[1]

■ The amount of sanctions to be awarded under this Rule should be concomitant with the purpose of Rule 11 to deter baseless filings and curb abuses. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990); *Caisse Nationale de Credit Agricole–CNCA v. Valcorp*, 28 F.3d 259 (2d Cir.1994); *McMahon v. Shearson/American Express, Inc.*, 896 F.2d 17, 21 (2d Cir.1990). "The primary principle in imposing sanctions is that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons." *Kirschner v. The Zoning Bd. of Appeals of the Incorporated Village of Valley Stream*, 159 F.R.D. 391 (E.D.N.Y.1995). However, the impositions of the sanctions and the calculation of the appropriate amount is within the Court's discretion. *Id.*, citing *Caisse Nationale*, 28 F.3d at 264.

## B. *28 U.S.C. Section 1927*

28 U.S.C. Section 1927 provides:

Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

■ As the Second Circuit has recognized, the burden of proof under this section is clear and convincing. The movant is required to make a "clear showing of bad faith ... [as a] prerequisite to the imposition of sanctions." *Ametex*, slip op. at 4 (*citing Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir.1996). Bad faith may be inferred "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Id.* (*quoting, State of New York v. Operation Rescue Nat'l*, 80 F.3d 64, 72 (2d Cir.1996). "By its terms, Section 1927 looks to unreasonable and vexatious multiplications of proceedings, and it imposes an obligation on attorneys through the entire litigation to avoid dilatory tactics." *United States v. International Broth. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir.1991). Although some circuits have held that the bankruptcy court lacks the jurisdiction to impose sanctions under Section 1927, the Second Circuit has permitted bankruptcy courts to impose sanctions pursuant to this provision. *See In re Cohoes Industrial Terminal, Inc.*, 931 F.2d 222, 230 (2d Cir.1991).

■ Unlike Bankruptcy Rule 9011, this provision is applicable solely to attorneys and their law firms, and does not extend to the client. *Brignoli v. Balch Hardy & Scheinman, Inc.*, 735 F.Supp. 100 (S.D.N.Y.1990); *Hudson Motors v. Crest Leasing*, 845 F.Supp. 969, 978 (E.D.N.Y.1994). Liability

---

1. The 1993 amendments to Fed.R.Civ.P. 11 expressly authorize the applicability of Rule 11 to the attorney's law firm. Bankruptcy Rule has not been similarly amended, therefore *Pavelic & LeFlore* still applies in bankruptcy cases.

will extend to a law firm only if such law firm conduct rises to the "bad faith" standard required by this section. *Brignoli,* 735 F.Supp. at 102. As Section 1927 states, a party which violates this section shall be required to satisfy the excess costs, expenses and counsel fees reasonably incurred because of such conduct.

### DEBTOR'S CONDUCT

A. *Filing Schedules and Statement of Financial Affairs Containing False Statements.*

 As set forth in this Court's decision dated August 22, 1996, the Debtor's petition, schedules and statement of financial affairs which he signed were "peppered" with material omissions and false statements, ostensibly to conceal assets and transfers of assets. These actions subjected Debtor to denial of his discharge, and are sufficiently egregious to warrant the imposition of sanctions under Bankruptcy Rule 9011. The Debtor tried to lay the blame on the omissions with his bankruptcy counsel, but his argument fails. In this case, the Defendant, not his bankruptcy counsel, signed his schedules and statement of financial affairs, and his conduct falls within Bankruptcy Rule 9011. There is no advice of counsel defense where the client misrepresents the facts to his counsel. In any event, as this Court found in its decision, the Debtor is a knowledgeable businessman who clearly had the mental capacity to understand the questions posed on the petition, and before signing a document which was not accurate, he had an obligation to review and correct any false statements.

In its decision barring the Defendant's discharge, the Court found that the Debtor concealed $59,000 held in his Prudential checking account, $9,000 in the Home Savings account, the transfer of his $60,000 interest in SDS Partners to his wife, his interest in household goods, his Rolex watch, his equitable interest in his residence worth at least $175,000 and his payments to preferred creditors in the amount of $19,687.10. Clearly, these omissions mandate an imposition of sanctions against the Debtor because he alone was in a position to verify the statements contained in the petition. *See In re Gioioso,* 979 F.2d at 959.

The Plaintiff has urged the Court to deem the debtor's entire petition a bad faith filing. In support of its argument, the Plaintiff attempts to analogize this case to *In re Marsch,* 36 F.3d 825 (9th Cir.1994), in which the Ninth Circuit Court held that the debtor's petition which was filed solely for the purpose of avoiding the posting of an appeal bond constituted a bad faith filing. Although this Court has concluded that the Defendant's petition contains many omissions and false statements, and may have been intended to frustrate Plaintiff as its major creditor, this Court has not made a finding that the petition was filed in bad faith and declines to do so at this point. It is the false statements contained in the Defendant's schedules and statement of financial affairs, not the filing of the petition itself, which gives rise to the sanctionable conduct.

Based on the Debtor's knowing falsification of information contained in the Schedules and Statement of Financial Affairs, the Court is bound to make a finding under Bankruptcy Rule 9011 that Debtor's conduct is sanctionable. The Court finds, in its discretion, that an award of $5,000 payable within thirty days of this Court's order is appropriate, and is consistent with the purpose of Bankruptcy Rule 9011—to deter such baseless conduct. The Court recognizes that the Debtor has been denied a discharge of all his debts and therefore has taken this into account in determining the amount of this sanction.

B. *Obstruction of Discovery in Adversary Proceeding*

 As to the Debtor's actions during discovery, it is clear that the Debtor sought to unreasonably delay discovery at every turn. The Debtor objected to the production of every document sought in the Plaintiff's initial request on the grounds that the request was overly broad, vague and irrelevant, and failed to timely produce all documents requested. A review of the document request reveals that the categories of documents sought pertained to the Debtor's financial condition at the time of the filing and were entirely relevant to the adversary pro-

ceeding. Thereafter, on April 6, 1995, the Court ruled that the Debtor was to produce responsive documents by April 7, 1995 and to be examined between April 20, 1995 and April 25, 1995. The Debtor failed to fully comply with the Court's order, and produced only a portion of the requested documents by April 13, 1995. This failure alone constitutes grounds to sanction the Debtor for failure to abide by this Court's orders.

The Debtor's failure to produce documents continued, and the Plaintiff was constrained to serve non-parties to gather the documents. In fact, the Defendant still had not produced all relevant documents requested as of the date of the trial on February 2 and February 5, 1996. The documents which were withheld and subsequently turned over turned out to be some of the most dispositive regarding the Debtor's culpability. The only purpose for failing to comply with discovery appears to have been to delay and obfuscate the proceedings.

Based on the Debtor's obstreperous conduct in connection with the defense of this adversary proceeding, sanctions under Bankruptcy Rule 9011 are warranted. The appropriate amount to be awarded should be calculated to deter this type of conduct, and may take into consideration the Plaintiff's counsel fees incurred in the amount of $78,385 in connection with this adversary proceeding.

However, the fees incurred in connection with the entire adversary proceeding appear to be substantial. In this instance, an award based on this entire amount would be inappropriate, given that the purpose of Rule 11 is to deter baseless conduct. Therefore, for the Defendant's acts in not turning over, or providing the documents requested and those he was directed to produce by court order in the adversary proceeding, the Court grants an award against the Defendant in the amount of the legal fees incurred in connection with the discovery disputes, which shall be joint and several with Warner for the reasons set forth below.

### KENNETH WARNER, ESQ.

A. *Sanctions Pursuant to Bankruptcy Rule 9011*

 The Debtor's litigation attorney did not participate in the filing of the petition, and therefore cannot be held responsible for its contents. In addition, the Court does not find that counsel's defense of the adversary proceeding to be sanctionable *per se.* However, Warner did sign the responses to the document requests in the adversary proceeding, and it appears to the Court that he failed to verify the accuracy of the responses in any meaningful manner. His blanket assertions that the documents requested were not relevant when each request concerned the Debtor's financial condition at the time of the petition or prior thereto were clearly untrue, and cannot be attributed to Warner's ignorance of the applicable law. The relevance of the documents requested could easily have been verified, had Warner conducted any independent inquiry. Such failure to take even the most minimal steps to independently review the documents, prior to signing pleadings claiming they were not relevant, warrants sanctions under Bankruptcy Rule 9011. *See Littel v. Twentieth Century–Fox Film Corp.,* slip op., 1996 WL 376971 (Attorney's failure to ascertain that client had no claim under copyright laws as client's book bore no resemblance to movie of the same name warranted sanctions under Rule 11).

 Warner's decision to take it upon himself to determine the relevance of documents in spite of orders directing the Defendant to produce the complete and original documents is also sanctionable under Bankruptcy Rule 9011. It is not up to the Defendant's counsel to determine on his own whether the documents reflect sufficiently egregious conduct by the Defendant. Rather, it is counsel's duty and obligation to produce the documents pursuant to the Court's Order, and to let the Court make findings of fact and conclusions of law. Warner's repeated refusal to produce documents and information which the Court directed be produced smacks of arrogance. In addition, it caused undue delay and caused the Plaintiff to incur additional legal fees. Therefore, sanctions are warranted against Warner under Bankruptcy Rule 9011.

B. *Sanctions Pursuant to 28 U.S.C. Section 1927*

 It appears that several of Mr. Warner's actions during the course of the trial

were sufficiently egregious to warrant sanctions under 28 U.S.C. Section 1927. Warner disregarded the Court's discovery directives which delayed the production of critical documents, and attempted to quash subpoenas served on third parties to prevent the same documents from being turned over. Warner, who admitted that he did not even represent Bear Stearns, one of the parties subpoenaed, gave no colorable reason for seeking to quash the subpoenas of third parties. No other purpose can be gleaned from his actions other than to delay the proceedings and unnecessarily escalate costs.

Upon review of the documents produced by the third parties and withheld by the Debtor, it became clear that the Debtor had an interest in the SDS Partners, and that information on a loan application produced by the Debtor had been tampered with.

Although Warner insists that certain information, including the information regarding the SDS Partners fund was irrelevant, the Court finds otherwise. The Defendant's interest amounted to over $65,000 as of January 1993, and the Defendant transferred $60,000 of his interest to his wife by the close of 1993. The Court did not find this transfer to be insubstantial, as this transfer was made to Karen Dubrowsky, Debtor's spouse, without consideration.

In addition, if Warner had undertaken a cursory review of the loan application provided by the Defendant, before delivering it to Plaintiff's counsel, he would have seen that in response to a demand for an original document he had turned over a document which had been tampered with by the redaction of original information. The value of the loan application as redacted was minimal, and such redaction served merely to delay discovery of incriminating material. This caused the Plaintiff to have to pursue obtaining a true copy of the original document. Warner has provided no plausible rationale for the production of the document as redacted, and the Court must conclude that his failure to make appropriate inquiry as to the total or original contents of the document, and his willingness to "pass off" the redacted document as an original constitutes sanctionable conduct.

█ Mr. Warner's actions as described above appear to be so "completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *State of New York v. Operation Rescue Natal,* 80 F.3d 64, 72 (2d Cir.1996). The Debtor and Warner had a duty and an obligation to the Court to produce documents in their original form. It was not Warner's province to determine which information was relevant and which information was irrelevant. Therefore, sanctioning Mr. Warner's conduct pursuant to Bankruptcy Rule 9011 and 28 U.S.C. Section 1927 is clearly warranted. However, the sanctions shall be limited to joint responsibility along with the Defendant for the legal fees incurred by the Plaintiff in connection with Plaintiff's multiple discovery requests, necessity for appearance in Court because of discovery disputes, and the Defendant's motions to quash third-party subpoenas.

### COBLENCE & WARNER

█ The Court does not find that the law firm's actions are sanctionable under 28 U.S.C. Section 1927, as the Plaintiff has not pointed to any law firm conduct which falls within the parameters of this Section. This is not a case where a large law firm has attempted to "paper" the Plaintiffs into submission using a variety of its resources; rather, it is the actions of Warner that the Court finds sanctionable. Therefore, the Court declines to sanction the law firm of Coblence and Warner.

### COSTS

█ The Plaintiff has requested reimbursement of costs in connection with this adversary proceeding. The Plaintiff urges the Court to enter the costs as calculated under 28 U.S.C. Section 1920, but the Defendant claims that Eastern District Civil Rule 11, which imposes a more limited list of taxable costs and prohibits such taxation if an appeal is pending, is applicable. If Local Rule 11 were deemed to apply, then the request to tax costs would be procedurally premature as an appeal of this Court's deci-

sion to bar the Debtor's discharge is currently pending.

Although the local Bankruptcy Rules are silent on this issue, Federal Bankruptcy Rule 7054(b) provides guidance on the procedure for taxation of costs as follows:

(b) Costs. The court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides.... Costs may be taxed by the clerk on one day's notice; on motion served within five days thereafter, the action of the clerk may be reviewed by the court.

Bankruptcy Rule 7054(b) is the bankruptcy equivalent to Fed.R.Civ.P. 54(d). Unlike Local Rule 11 for the Eastern District of New York, this provision does not prohibit taxation of costs if an appeal is pending. Therefore, this Court shall not read such prohibition into Bankruptcy Rule 7054(b) and finds that it is appropriate to tax costs at this time.

 As to the amount of costs to be taxed, the Bankruptcy Rules are silent other than to indicate that the amount to award is discretionary. If the Court were to follow the guidelines contained in 28 U.S.C. Section 1920, the following six items would be taxable as costs: (1) fees of the clerk and marshal; (2) fees for court reporter's stenographic transcript necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for copies of papers necessarily obtained; (5) docket fees under 28 U.S.C. Section 1923; and (6) compensation of court-appointed experts and interpreters.

If the Court were to follow Local Rule 11 for the Eastern District, the following items would be taxable as costs; (1) transcripts which were authorized in advance or ordered by the court; (2) depositions which were read into evidence; (3) witness fees if the witness takes the stand; (4) reasonable interpreting costs; (5) copies of exhibits if the original is unavailable; (6) costs of maps, charts, etc.; (7) docket fees; (8) fees to masters, receivers and commissioners; and (9) costs for title searches.

Although there is a dearth of case law in the Second Circuit concerning the appropriate costs to tax in a bankruptcy case, *Collier's* indicates:

The general rule is that the power or authority of the court to tax a particular litigation expense item as costs must be found in a federal statute, rule of court, or in the custom, practice and usage applicable in a particular district, and in some instances, by the exercise of the court's general equitable discretion. The costs of deposition transcripts is often awarded, either under 28 U.S.C. Section 1920 as a 'stenographic transcript,' by local rule or under the general equitable power of the court. See Rule 11(c)(2) of the Civil Rules of United States District Courts for the Southern and Eastern Districts of New York.

9 Collier on Bankruptcy Para. 7054.07 (15th Ed.1996)

In the exercise of its discretion, and keeping in mind the custom, practice and usage applicable to the courts of the Eastern District of New York, the Court allows for the taxing of costs pursuant to 28 U.S.C. Section 1920, modified as follows:

(1) Fees of the clerk and Marshall ........................$ 120.00
(2) Transcript fees—although the Court did not order the parties to obtain trial or deposition transcripts, the Court did rely on the trial transcripts in deciding the motion for summary judgment and in preparing the written decision. Therefore, the Court shall allow the costs of the transcripts to be taxed.
Trial transcripts ...........$ 706.20
Deposition transcripts .......$10,542.85
(3) Fees for printing and witnesses—witness fee taxable only for those who testify
Trial .......................$ 60.00
Deposition .................$ 150.00
(4) Fees for Copies—Limited pursuant to Eastern District Rule 11 to Trial exhibits admitted into evidence....$ 50.31
(5) Docket Fees ...................$ 30.00
Total .....................$11,659.36

Finally, the Court denies the Defendant's cross-motion for sanctions against the Plaintiff for filing the sanctions motion. Clearly, the Plaintiff's sanctions motion has merit, and is not sanctionable.

### CONCLUSION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a).

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(a).

3. The Court grants sanctions against the Debtor in the amount of $5,000 for providing false statements on the petition and statement of financial affairs, pursuant to Bankruptcy Rule 9011. Such award shall be payable within thirty days of this Court's order.

4. The Court finds that the Debtor and Warner are jointly and severally liable for employing vexatious and obstructionist tactics in discovery and shall be held liable jointly and severally for all counsel fees incurred by the Plaintiff in connection with the Debtor's failure to comply with discovery demands, pursuant to Bankruptcy Rule 9011 and/or 28 U.S.C. Section 1927.

5. The Court denies the portion of the Plaintiff's motion seeking to sanction Coblence & Warner.

6. The Court grants the taxing of costs in the amount of $11,659.36.

7. The Court denies the Debtor's cross-motion in its entirety.

Settle an order in accordance with this decision, providing the Court with copies of the relevant time records from Bryan, Levitin & Bab to enable the Court to fix the amount of sanctions against the Debtor and Warner for the abusive discovery tactics.